**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Criminal Action No. 05-77-GMS |
| : | |
| LEONARD BETHLY, : | |
| : | |
| Defendant. : | |

**RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS PHYSICAL EVIDENCE NUNC PRO TUNC**

**NOW COMES** the United States of America, by and through its undersigned attorneys, and hereby responds to Defendant's Motion to Suppress Physical Evidence Nunc Pro Tunc (D.I. 10), as follows:

  1.  In his Motion and accompanying Memorandum of Law, the defendant advances a number of arguments as to why certain items seized from his vehicle by Delaware State Police officers on May 30, 2005, including a Smith & Wesson .38 caliber revolver (serial number CAT9477), should be suppressed.  Prior to a discussion of these arguments and the reasons why they should be rejected by the Court, this Response will first set forth the relevant factual circumstances surrounding the defendant's arrest and the accompanying seizure of these items.

**Factual Background**

  2.  On May 30, 2005, at approximately 11:30 p.m., Delaware State Police officers were patroling the area around the Holiday Inn located at 1201 Christiana Road in Newark, DE.  The area surrounding the Holiday Inn was known to the officers to be one where drug-related and other criminal activity often occurs.

3.  The officers observed a security guard from the Holiday Inn standing on the west side of the building. They then saw him walk to the back of the building and wave to an approaching vehicle. The vehicle pulled up to the rear of the building, nearby to where the security guard was standing. An officer then observed the security guard and the driver of the vehicle begin to load items from the motel into the vehicle's trunk. At that point, the officers drove toward the motel's parking lot.

4.  When the officers pulled up alongside the two individuals, they could see that the car's trunk was open and that the trunk contained some beef and a six-pack of beer. The officers could also see that the area from which the security guard had removed the items was in fact the rear of a restaurant that was a part of the motel.

5.  The officers then asked the car's driver and the security guard to provide identification. The driver of the car – the defendant – was standing nearby to the vehicle at this point. The defendant verbally identified himself as Keenan Bethly and produced a Delaware driver's license that also identified him as Keenan Bethly. A subsequent check revealed that the vehicle, a 1994 Buick, was also registered to a Keenan Bethly. (Only later, after the defendant's arrest, did a fingerprint analysis reveal that the defendant's real name was Leonard Bethly and that he had provided the officers with a false first name.). The security guard was identified as Reginald Armstrong.

6.  The officers questioned the defendant as to why he was having items from the motel placed in his vehicle. In response, the defendant told one officer that he had purchased some prime rib from Mr. Armstrong for $25.00.

7. At this point, one of the officers went into the motel and asked the motel's manager, Charles Scrafford, to come to the back of the motel where the defendant's vehicle was located. Upon arrival at the back of the motel, Mr. Scrafford stated that Mr. Armstrong was not authorized to sell anything from the motel and that, as a result, Mr. Armstrong and the defendant appeared to be stealing goods from the motel.

8. The defendant was then placed in handcuffs. Afterwards, the officers more closely examined the contents of the trunk and recovered some prime rib and a six-pack of beer. They then proceeded to search the remainder of the vehicle. During that search, the officers opened the glove compartment of the car and behind it found a silver revolver, later determined to be the Smith & Wesson .38 caliber revolver, which was loaded with four rounds and one empty casing of .38 caliber ammunition. In a natural opening in the right hand side of the glove compartment, the officers also found a glove, which contained sixteen rounds of 9 mm ammunition. Also found in the passenger compartment of the vehicle during the search was approximately one gram of marijuana and four tablets of the drug Ecstasy. In addition, a search of the defendant's person subsequent to his arrest uncovered $1,583.00 in currency located in his right front pants pocket.

9. When the defendant was made aware that a firearm had been found in the vehicle, he fled from the officers on foot. The defendant was detained by some of the officers after a chase of approximately 100 yards.

**Legal Argument**

10. The defendant puts forward multiple arguments in support of his contention that the search for and seizure of evidence in this case was done in violation of the Fourth

Amendment. He therefore seeks the suppression of (1) the Smith & Wesson revolver; (2) the one gram of marijuana; (3) the four tablets of Ecstasy; and (4) the $1,583.00 in United States currency. As is discussed below, none of the defendant's arguments provide a basis for suppression of these items.

11.    First, the defendant asserts that, at the time when the officers pulled up to the parking lot and began to question the defendant, the officers did not have reasonable suspicion to believe that a crime was in progress. Even if the police had reasonable suspicion to believe that criminal activity was occurring, the defendant argues, they should not have searched the trunk for proceeds of the theft of food.

12.    The defendant's arguments in this regard should be rejected. Even assuming that the defendant was seized by the police during the time period after the police arrived on the scene and before they placed the defendant in handcuffs, such an investigatory stop was appropriate under *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (noting that an officer, without a warrant, "may consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot"); *Terry*, 392 U.S. at 22-24. Here, the officers were in possession of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the actions they took. *Terry*, 392 U.S. at 21.

13.    In this case, the officers were patroling what they knew to be a high-crime area. *See United States v. Rickus*, 737 F.2d 360, 365 (3rd Cir. 1984) (noting that neighborhood's reputation as high-crime area has probative value in determining reasonable suspicion supporting a *Terry* stop); *United States v. Johnson*, 238 F.Supp. 2d 663, 672 (D. Del. 2002) (Sleet, J.)

(same) (citing cases). They then saw the defendant pull up to the motel in a non-commercial vehicle (*i.e.*, a vehicle that was not a delivery truck, nor a vehicle that had some other outward indicia that it was engaged in a legitimate commercial relationship with the motel) and witnessed various items from the motel being placed in the defendant's trunk. Moreover, this activity was occurring just before midnight, with the lateness of the hour further suggesting that this transfer of goods may not be innocent commercial activity. *See Michigan v. Long*, 463 U.S. 1032, 1050 (1983) (listing the lateness of the hour as a circumstance justifying officer's reasonable suspicion); *Rickus*, 737 F.2d at 365 (same); *see also United States v. Brown*, 334 F.3d 1161, 1165 (D.C. Cir. 2003) (same, citing cases). These circumstances, taken together, created reasonable suspicion that the crime of theft may have been occurring, sufficient for the officers to investigate further. *Cf. United States v. Bayless*, 201 F.3d 116, 132-34 (2d Cir. 2000) (finding reasonable suspicion existed to stop driver of car where police had just observed men silently loading duffel bags into trunk of car at early hour, in neighborhood known for drug activity, then fleeing from vehicle after driver pulled away).

      14.     Upon drawing closer to the defendant's vehicle, the officers could see in plain view that the defendant's trunk contained prime rib and beer. They undertook no further search of the trunk at that time, and their observation of the trunk's contents was not violative of the Constitution. *See Texas v. Brown*, 460 U.S. 730, 738 (1983) (finding that plain-view observations by an officer properly in a position to have such a view do not constitute unreasonable searches under the Fourth Amendment).

      15.     The officers then took appropriate actions in an attempt to assess the situation. *See United States v. Sharpe*, 470 U.S. 675, 697 (1985) (Marshall, J., concurring) (stating that

during a proper *Terry* stop, an officer may "briefly stop [the] person, ask questions, or check identification, . . . and, if warranted, [] conduct a brief pat-down for weapons") (citation omitted). They quickly moved to ascertain the defendant's and the security guard's identity, and asked questions of the defendant to explain what he was doing. The defendant claimed that he had purchased the prime rib from Mr. Armstrong, the motel security guard. The officers then quickly brought the motel's manager, Mr. Scrafford, to the scene to confirm the legitimacy of the defendant's explanation. But when the officers questioned the manager, he made clear that Mr. Armstrong had no authority to sell any items from the motel. Instead, Mr. Scrafford stated his belief that the defendant was engaged in theft of motel property, which led to the defendant being subsequently handcuffed and arrested. Nothing about the officers' behavior violated the parameters set forth in the *Terry* line of authority.

16.   As a second line of argument, the defendant claims that the police did not effectuate a valid arrest of the defendant, because at the time in which they placed him in handcuffs they allegedly did not have probable cause to believe that the defendant had committed a crime. Therefore, the defendant claims, without a valid arrest, the police were not entitled to search the defendant's vehicle based upon the automobile exception to the search warrant requirement. Moreover, the defendant states that even if the officers could have validly searched the trunk of the car – because they had seen items being loaded into the trunk – the officers had no legal right to search the remainder of the car.

17.   The defendant's arguments are unavailing. As an initial matter, by the time the officers arrested the defendant and placed him in handcuffs, they clearly had probable cause to believe a crime had been committed. *See Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)

(stating that probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense") (citation omitted).  Here, the factors discussed above, including the motel manager's confirmation that Mr. Armstrong was not authorized to sell the items that had been loaded into the defendant's car, clearly provided probable cause for the officers to believe that the crime of theft had occurred, and to arrest the defendant as a result.[1]

18.     Once the officers had probable cause to lawfully arrest the defendant, they were entitled to search the entire passenger compartment of the defendant's car as a contemporaneous incident of that arrest.  *See Thornton v. United States*, 124 S.Ct. 2127, 2129 (2004); *United States v. Mighty*, No. Crim. A. 04-54-GMS, 2005 WL 950627 at *10 (D. Del. Apr. 26, 2005) (Sleet, J.).  This "bright line rule" applies both to arrestees who are occupants of the vehicle when the police first make contact with them, as well as to those who recently occupied the vehicle prior to police contact.  *See Thornton*, 124 S.Ct. at 2129-32 (finding that search of defendant's vehicle, occurring after defendant had been handcuffed and placed in rear of police car, was justified where officer conducting search of car had observed defendant driving and exiting car shortly before defendant's arrest); *Mighty*, 2005 WL 950627 at *10-11 & n.12 (citing *Thornton* for that principle).  In this case, the officers had observed the defendant driving in and exiting the vehicle just minutes before the defendant was arrested and the vehicle searched.  The

---

[1] The defendant's person was searched only subsequent to his arrest, uncovering the $1,583.00 in United States currency located in the defendant's right front pants pocket. Because the corresponding arrest was justified, the search for and seizure of this currency incident to arrest was also justified.

resulting seizure of the handgun, the ammunition and the drugs from the vehicle were therefore justified on this basis.

19.     Moreover, because the police had probable cause to believe that evidence of a crime was located in the defendant's car, they were entitled to search the entirety of the car for that evidence, pursuant to the automobile exception to the search warrant requirement.[2]  The Supreme Court has held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).  In this case, the officers had seen items being loaded from the motel into the car's trunk – items that the motel's manager confirmed that Mr. Armstrong did not have the authority to sell.  In these circumstances, the officers had probable cause to believe that other evidence relating to the apparent crime – such as money used to pay for the stolen items or evidence of the defendant's plans to meet Mr.

---

[2]     In a footnote, the defendant appears to suggest that the automobile exception to the search warrant requirement may not apply in this case, citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971).  *See* Defendant's Memorandum of Law at n.1.  In *Coolidge*, the Supreme Court found that, notwithstanding the rationales behind the automobile exception to the search warrant requirement, the police could not search a car parked in the defendant's driveway without a warrant. *Id.*  However, the Supreme Court has clearly held that *Coolidge* turned in significant part on the fact that the car in that case was parked on private property, in a private driveway, and that a higher expectation of privacy attached to its contents as a result.  *See Cardwell v. Lewis*, 417 U.S. 583, 593 (1974) (distinguishing *Coolidge* on those grounds from other cases where a vehicle was located in a public place where access to the vehicle was not meaningfully restricted).  In contrast, in cases similar to this one, where a vehicle was located in motel parking lots or other public parking lots, courts have repeatedly found that the lack of a warrant does not invalidate the otherwise legal examination of a car.  *See id.* at 593-94 (finding that warrant requirement did not apply in case where defendant's car was seized from a public parking lot); *United States v. Sinisterra,* 77 F.3d 101, 105 (5th Cir. 1996) (finding warrant requirement did not apply where defendant's car was seized in mall parking lot, and finding that automobile exception applies to cars seized from motel parking lots) (citing cases); *United States v. Chapdelaine*, 616 F.Supp. 522, 529 (D.R.I. 1985) (finding that warrant requirement did not apply where defendant's car was seized and searched in a motel parking lot, where defendant had recently driven onto motel property)

Armstrong and participate in the crime – might be stored in other parts of the car's passenger compartment. As a result, the officers' subsequent search of the passenger compartment, including the glove compartment, was separately justified on these grounds. *Cf. Rickus*, 737 F.2d at 367 (finding that evidence suggesting that car's occupants had or might commit crime of burglary, including a screwdriver and pliers spied on car's floor, provided probable cause to search car's trunk for additional evidence of crime); *United States v. Schecter*, 717 F.2d 864, 870-71 (3d Cir. 1983) (finding that arrest of driver on drug charges, combined with other evidence relating to his drug use, provided justification to search passenger compartment and trunk for evidence relating to drugs); *United States v. Shepherd*, 714 F.2d 316, 319-20 (4th Cir. 1983) (finding that agents' observation of defendant placing jugs into trunk of car, coupled with other information known to agents suggesting defendant was engaged in illegal whiskey enterprise, provided probable cause to search entire car for other evidence of enterprise).

20.     In addition, the seizure of the handgun, ammunition and drugs should also be upheld on the grounds that the evidence would inevitably have been discovered, even had the officers not searched the car at the time of the arrest. *See Nix v. Williams*, 467 U.S. 431, 444 (1984) ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received."). In this case, the officers' routine procedures dictated that an inventory search of the vehicle should be conducted after such an arrest, with the vehicle thereafter being towed away. The handgun, ammunition and drugs would have inevitably been discovered during such a search, and thus should not be suppressed. *See United States v. Vasquez de Reyes*, 149 F.3d 192, 195 (3rd Cir.

1998) (noting that evidence obtained from unlawful search of vehicle will likely be admitted when police show that evidence would have been inevitably discovered in inventory search conducted after impoundment) (citing *United States v. Haro-Salcedo*, 107 F.3d 769 (10th Cir. 1997)); *see also United States v. Johnson*, 112 Fed. Appx. 138, 139-40 (3rd Cir. 2004) (affirming denial of suppression of drugs found in duffel bag that was in defendant's vehicle, where evidence showed that drugs would have inevitably been discovered during routine inventory search); *United States v. Woody*, 55 F.3d 1257, 1270 (7th Cir. 1995) (affirming denial of suppression of stolen checks in locked glove compartment where police would have inevitably discovered checks during inventory search of car).

**Motion in Limine**

21.    Lastly, the defendant argues that the drugs and the currency should be inadmissible at trial pursuant to Federal Rule of Evidence 403, because those items are overly prejudicial to a defendant facing trial for possession of a firearm. With respect to the drugs, the Government does not plan to use them as evidence in its case-in-chief, and therefore submits that the defendant's argument on that point is moot. As to the currency, the Government respectfully requests that this Court defer ruling on that aspect of the Motion in Limine, without prejudice to the defendant's ability to later renew the motion, until a date closer to a trial in this matter, if a trial is to occur. The Government submits that facts regarding this case are continuing to be developed and that deferral of this issue until a later time will allow for a more complete inquiry into the merits of the argument.[3]

---

[3]    If, however, the Court indicates that it wishes to receive briefing on this issue at the present time, the Government will be prepared to respond.

**WHEREFORE,** the United States requests that the Court deny, without a hearing, defendant's Motion to Suppress.

                          Respectfully submitted,

                          COLM F. CONNOLLY
                          UNITED STATES ATTORNEY

                BY:      /s/
                          Christopher J. Burke
                          Assistant United States Attorney

Dated: November 16, 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 05-77-GMS |
| | : | |
| LEONARD BETHLY, | : | |
| | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

I, Christopher J. Burke, Assistant United States Attorney for the District of Delaware, hereby certify that on the 16th day of November, 2005, I caused to be electronically filed a **Response to Defendant's Motion to Suppress Physical Evidence Nunc Pro Tunc** with the Clerk of the Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF. I further certify that a copy of the foregoing was mailed via first class mail to counsel of record as follows:

Elliot Cohen
Two Penn Center Plaza
15th and JFK Boulevard, Suite # 1516
Philadelphia, PA 19102

                                                                         /s/
                                          Christopher J. Burke
                                          Assistant United States Attorney