IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF DELAWARE

UNITED STATES OF AMERICA           NO. 05-77-GMS

vs.

LEONARD BETHLEY

LEGAL MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS PHYSICAL EVIDENCE

**(I) THE POLICE LACKED REASONABLE SUSPICION TO CONDUCT AN INVESTIGATIVE DETENTION OF MR. BETHLEY**

An investigative detention, a brief seizure by the police based on reasonable suspicion of criminal activity is a "narrowly drawn" exception to the probable cause requirement of the Fourth Amendment. U.S. Constitution Amendment IV; Terry v. Ohio, 392 U.S. 1, 26 (1968). In order to conduct an investigative detention, the police must have a reasonable articulable suspicion that a crime has been committed or that criminal activity is afoot. Id. At 21-22.[1] "The reasonable suspicion analysis does not depend on one factor but on a totality of circumstances." United States v. Brugal, 209 F. 3rd 353, 359 (4th Cir. 2000) (citing United States v. Sokolow, 490 U.S. 1, 8 (1989). To satisfy this standard, the police must show specific and articulable facts together with rational inferences drawn from those facts, that reasonably suggest that a crime has occurred or is imminent. Terry at 21. Morever, the "legality of a stop must be judged by objective facts known to the seizing officers rather than by the justifications articulated by them." United States v. Hawkins, 811 F. 2d

---

[1] In furtherance of the investigative detention, the police may only conduct a pat down if there is a reasonable articulable suspicion that the suspect is armed and dangerous. Id. At 22-24. That is not at issue here.

210, 213 (3rd Cir. 1987).Hunches or generalized suspicions are not sufficient. <u>Ybarra v. Illinois,</u> 444 U.S. 85, 92-93 (1979) <u>United States v. Davis</u>, 94 F. 3rd 1465, 1470 (10th Cir. (1996) (no reasonable suspicion to stop suspect who parked outside known criminal establishment, made and broke eye contact with police, kept hands in pockets, did not stop when police requested, and had criminal record). The primary basis for reasonable suspicion therefore, is a police officer's personal observations, and the collective knowledge of several law enforcement officers. See, <u>United States v. Hensley</u>, 469 U.S. 221, 229, 232-35 (1985). The police cannot base reasonable suspicion on isolated or minimal instances of criminal activity. See, <u>Reid v. Georgia,</u> 448 U.S. 438, 441 (1980) (per curium); <u>United States v. Wilson</u>, 953 F. 2d 116, 124-25 4th Cir. 1991) <u>United States v. Jones,</u> 149 F. 3rd 364, 367 (5th Cir. 1998); <u>United States v. Johnson</u>, 171 F. 3rd 601, 605 (8th Cir. 1999); <u>United States v. Sigmond - Ballesteros,</u> 247 F. 3rd 943, 953 (9th Cir 2001); <u>United States v. Wood,</u> 106 F. 3rd 942, 947 (10th Cir.1997).

The objective facts taken together constitute wholly innocuous activity. That activity does not constitute reasonable suspicion to believe that a crime has been committed or was being committed. At approximately 11:30 p.m. on May 30, 2005, Probation Officer Mark Lewis and James Kelly were in the parking lot of the Holiday Inn at the Intersection of Route 273 and Harmony Road in Christiana, Delaware. Lewis observed a man dressed in a security guard uniform (N.T. Supp 6) The Security guard was walking back and forth in front of the restaurant. (p.6). About ten minutes later, the security guard re-emerged from the restaurant and hand gestured to a car that pulled into the hotel parking lot. The vehicle did not proceed to the parking lot in a surreptitious manner and the area of the parking lot was well lit and open to the public and hotel employees. (p. 9, 33,61). The vehicle then pulled into a parking spot behind the restaurant (p. 8). Lewis observed

the security guard putting an unknown object into the trunk (p.8). He did not believe the object to contain drugs. (p 41) The object came from inside Oliver's Restaurant which is attached to the Holiday Inn. The door to the restaurant was propped open, although the lights to the main dining area were off.(p.9-10)

Lewis then radioed to other police officers to respond to the scene. He did this because; "number one, it was the hour of the day, it was late at night. The restaurant was already closed. The vehicle that pulled into the back of the restaurant was not commercial vehicle". (p.10). Corporal Stout testified that he saw the security guard merely standing on the side of the hotel and he stated as follows:

> Q.   The man is just standing outside, officer. What is he doing that is so suspicious?
>
> A.   The only thing that he is doing suspicious is standing there at 11:30 at night, not having any apparent place to go or be. Typical people that we see coming in and out of the motel, they walk in the lobby, they go to their room. When they leave, they walk to the lobby, their car. They leave. We typically don't see anybody standing on the west side of that motel at 11:30 at night just standing there. (P.60)

Stout admitted that the security guard was not acting as a lookout or "casing the joint." (P.61). Stout only decides to approach when it is radioed to him that "property is coming out of the building." (P.62). That radio call is from other officers; not a citizen eyewitness an anonymous tip. Stout does

not witness any property coming of the building, however. (P.62). Essentially from Stout's perspective, he just sees Armstrong simply standing around and this drew his suspicion (p.61).

Merely seeing a man standing at 11:30 at night outside a joint entrance to a hotel and restaurant, combined with a hand gesture to a car to come and that vehicle arriving in a non-secretive manner does not constitute reasonable suspicion to believe that a crime has been or is being committed. The police therefore had no right to approach Bethley and Armstrong and detain them for questioning. They were thus not privileged to detain Bethley (and Armstrong) to ascertain their identities and confirm or dispel their suspicions by talking to the hotel manager. See, United States v. Sharpe, 470 U.S. 675, 697 (1985) (Marshall, J, concurring) (cited at p. 11 of Government's brief). The aforementioned events are all that the police witnessed. Even in their totality, these events fail to give a reasonable and objective basis for suspecting criminal activity. Thus, if the police had no right to approach Bethley and (Armstrong) detention then they were not properly in a position to plainly view the prime rib and beer in the trunk of the Bethley's car. See ,Texas v. Brown, 460 U.S. 730, 738, (1983). That decision, at any rate, holds that a generalized fear of criminal activity and the presence of a suspect in a high crime area are factors that standing alone, do not justify and investigative detention. Brown at 52. Admittedly, a collection of several innocent activities may cumulatively create reasonable suspicion. See generally, United States v. Sokolow 490 U.S. 1, 9 (1989). The jurisprudence that has emerged based on that proposition, however, holds that the objective validity of the officer's suspicion greatly depends on the police officer's experience in providing him/her with appropriate inferences of illegal activity that can be drawn from the collection of innocent acts. See, e.g. Sokolow, 490 U.S. at 9 (drug courier profile based on six characteristics common to drug couriers), United States v. Coggins, 986 F. 2d 651, 655 (3rd Cir.

1993). (reasonable suspicion to stop person at airport who fit drug courier profile, lacked identification, appeared nervous, had unusually brief vacation and car rental, and traveled with individuals known to engage illegal activities) See, United States v. Velez-Saldana, 252 F. 3rd 49, 53, (1st Cir. 2001), United States v. Cooper, 43 F. 3rd 140, 144-48 (5th Cir. 1995), United States v. Duguay, 93 F. 3d 346, 350-51 (7th Cir. 1996), United States v. Hishaw, 235, F. 3d 565, 570 (10th Cir. 2000); United States v. Powell, 222 F. 3rd 913, 917-18 (11th Cir. 2000). Putting aside that much of the case law in the circuits surrounding this issue has focused on the drug trade, (supra) the officers in this case gave no testimony as to how their experience in any way contributes to their determination that these innocent acts objectively justified their perception that a theft had occurred but at the hotel. Once again, we are left with mere hunches or suspicions, which themselves cannot be the basis of reasonable suspicion. (Supra).

The case law cited by the government in its brief does not and its position. [2]On page 9 of its brief, the Government cites to Untied States v. Ramires, 307 F. 3rd 713 (8th Cir. 2002) for the proposition that the 9:00 evening hour in the evening justified the investigative detention of the defendant's in an apartment complex. As point of fact, the police saw Ramires and two others hiding in a crawlspace leading outside from an apartment. These men were told by the police to exit the crawlspace that they had gone into when they were told by police to stop and were ultimately handcuffed for officers safety. One of the officers entered the crawlspace to see if anyone else was

---

[2]It should be recalled that this was not a "mere encounters that escalated into an investigative detention and later an arrest since Police Officer Stout testified that Bethley (and Armstrong) were not free to leave until he dispelled his suspicions (p 28-29) see, United States v. Mendenhall, 446 U.S. 544 (1980), United States v. Shabazz, 993 F. 2d 431, 436 (5th Cir. 1993).

there and ultimately these men were arrested for methamphetamine possession based on what was found in an apartment. Ramires is therefore inapposite. Moreover, the Government's reliance on United States v. Nelson, 284 F. 3rd 472 (3rd Cir. 2002) (p. 8-Government's brief) is misplaced as that decision analyzes when the police may use an informant's telephone tip in basing a decision to conduct an investigative detention. That is not the case here. The Government's reference to the proposition in Nelson that reasonable suspicion "...accord[s] great deference to the officer's knowledge of the nature and nuances of the type of criminal activity that he had observed in his experience, almost to the point of permitting it to be the focal point of the analysis"still fails to aid the government's position. As the Court will recall, Mr. Lewis is a Senior Probation officer and he has given no testimony as to his knowledge of how theft crimes are committed, nor has he testified about any theft arrests that he has made. (p. 3)[3] Corporal Stout is a Delaware State Trooper with the Governor's Task Force. We know nothing that except that they were together for the purpose of conducting drug interdiction. (P.6, 67). Thus, there is no basis to conclude that their experience lends credibility to their belief that a theft was occurring. No deference should be accorded to Lewis and Stout's belief in this regard since they are not predicated on any degree of experience on the nature of the commission of theft crimes.

Even the decisions of United States v. Martin, 155 F. Supp 381 (E.D. Pa. 2001) (Robreno J.) and United States v. Kimball, 813 F. Supp 95 (D.Me. 1993) (Carter, C.J.) are conceptually and factually inapplicable to this case. In Martin, reasonable suspicion was founded after a stop for a traffic violation since Martin was driving on an out of state rental vehicle and circling the block 3-4

---

[3]Lewis testified that he was charged with the task of "patrolling] hot spots, crime hot spots..." and curfew checks". (p. 3).

times late at night in an area known by the police for numerous drug transactions. The officer's experience was also deemed a relevant factor in determining whether they had reasonable suspicion to force Martin to exit his vehicle. In this case, the court has already discounted the government's argument that the area was a high crime area. (p.66). The other factual circumstances in <u>Martin</u> are irrelevant to the instant case with the exception of the lateness of night. The <u>Martin</u> court, however, emphasized that the lateness of night is only one factor in the "totality" analysis. See, <u>United States v. Rickus</u> 737 F. 2d 360, 364 (3rd Cir. 1984). <u>United States v. Mattarolo</u>, 209 F. 3rd 1153, 1156, (9th Cir. 2000); <u>United States v. Bayless</u>, 201 F. 2rd 116, 133 (2d Cir. 2000). In any event, this court was not persuaded at the hearing that the 11:00 hour was a legitimate objective factor contributing to the reasonable suspicion analysis.(p.71). Moreover, in <u>Kimball</u>, as the District Court stated, "(a)mong the articulable factors which Deputy Word considered was the fact that a vehicle was in the school parking lot shortly after midnight, long after any school related functions had ended." <u>Kimball</u> at 98. That factor along with Deputy Word's knowledge of recent school burglaries through police bulletins and recognizing the suspect vehicle as belonging to someone he had arrested for burglary contributed to the reasonable suspicion analysis. Although the restaurant itself in this case may have been closed to patrons, the parking lot and the hotel were not. It would have thus been reasonable for a car like Bethley's to park near the joint entrance of the hotel and restaurant at 11:30 p.m. The fact that Bethley was gestured by Armstrong into coming to the parking spot is irrelevant since the parking lot serves the hotel community which is still active and accessible to the public to at 11:30 p.m. Lewis concedes that what he saw did not appear to be clandestine activity (p.33). Lewis also admits that he did not know what was going on when he made his observation and this was the basis of the stop (p. 34). At any rate, since the door to the restaurant was propped open there is a logical inference that employees were still present and working. There was nothing surreptitious about

Bethley's car being legally parked near a restaurant where its employees might still be working. Furthermore, with employees and patrons coming and going ,could be no reasonable inference that Mr. Bethley was a trespasser especially since he immediately joined the company of a security guard when he parked in the lot.   Kimball is thus distinguishable.

**(II)   THE POLICE LACKED PROBABLE CAUSE TO ARREST MR. BETHLEY**

Probable Cause is required for an arrest. Michigan v. Summers, 452 U.S. 692, 700 (1981). Probable cause to arrest exists when the police have knowledge or reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution to believe that: (1) an offense has been or is being committed; and (2) by the person to be arrested. Dunaway vs. New York,442 U.S. 200, 208, n. 9 (1979); Beck vs. Ohio, 379 U.S. 89 (1964); Henry v. United States, 361 U.S. 98, 102 (1959). An objective standard is used in determining whether there was probable cause to arrest. Michigan v. Chesternut, 486, U.S. 567, 574 (1988). As this court will recall, there was nothing on the package, specifically identifying it as hotel property (p.26-27). Nor was the hotel cook, who supposedly sold the meat and beer consulted by the officers on the details of the transaction (p 26). Rather, the police inquired of the hotel manager who focused his disappointment on "Reggie" for selling hotel property (p.15). There is no evidence, however, that the manager authenticated the items as being hotel property (p 26-27.). Furthermore, the police cannot even establish that Mr. Behtley knew he was in receipt of stolen property. As Corporal Stout testified:

> Q.   What evidence can you give this court that Mr. Behtley knew that he

was receiving stolen property, allegedly?

A.  We believed that it made sense that it was stolen because of the time of night that he was there and the fact that they were carrying it out the back door rather than through a front door. Other than that, that would be it...

Q.  Are you saying therefore the only basis upon which you conclude that he know that he was receiving stolen property is based, number one, or the fact that it was the time of night? Yes? Correct.

A.  What I witnessed. I would say if that happened at 3:00, you are going to have more traffic coming in and out, I don't think it would have been as suspicious. Whether or not – I can say whether or not I would have stopped them and asked them further. It would have been less suspicious had it happened at 3:00

(P.57-58)   Mr. Bethley did not carry the package out. Had no restaurant employees been working at 11:30 p.m. combined with the restaurant lights being off and Mr. Behtley arriving in a clandestine manor, the police might have probable cause to arrest because it can be assumed that the property was removed from the premises in a secretive manner. That is not the case here. Also, as this court has already found, the 11:30, hour was not that late, especially since the entire transaction was conducted in an "open and notorious" fashion (p. 71). The foregoing is thus insufficient to conclude that Mr. Bethley's was a knowing participant to a crime of theft or receiving stolen

property; a factor which the police needed objective facts to determine if they were going to effectuate an arrest based on probable cause. See, Beck v. Ohio, 379 U.S. at 91 (1964); See also Wong Sun v. United States, 371 U.S. 471, 479 (1963) "(It is basic that an arrest must stand on firmer ground than mere suspicion)". Under Delaware Law, theft and receiving stolen property contain a "knowledge" requirement. See, Del. Stat. § 841and subsection (a), Thus the police did not have probable cause to believe that Mr. Bethley had committed theft or receiving stolen property. [4]It has also been generally held by the United States Supreme Court that mere propinquity to criminal conduct does not give rise to probable cause to arrest. Ybarra v. Illinois, 444 U.S. 85, 91, (1979).

In Ybarra, the court found no probable cause to search and seize customers found in a bar for which the police had a lawful search warrant. Where the standard is probable cause, the police must have "probable cause particularized with respect to that person. This requirement cannot be undercut or avoided simply by pointing to the fact that coincidentally there exist probable cause to search or seizure another... Id. At 91. The U.S. Court of Appeals for the Ninth Circuit further applied the "mere presence" standard to a woman leaving a house where the police had probable cause to believe that methamphetamine was being manufactured, and in so doing, followed Ybarra for the proposition to arrest that her mere presence on the premises without more, fails to establish probable cause. United States v. Roberston, 833, F.2d 777 782-83 (9th Cir. 1987). See also, United States v. DiRe, 332, U.S. 581, 593 (1948) (mere presence in a vehicle containing counterfeit money insufficient to establish probable cause to arrest passenger); Wyoming v. Houghton, 526 U.S. 295 (1999) (reaffirming DiRe) 2 W Lafave Search & Seizure 3rd § 3.6 (c) at 310 (DiRe makes clear that companionship with an offender at the very time of the latter's criminal conduct is not inevitably

---

[4]The fact that Bethley and Armstrong were later charged in state court with conspiracy and theft related offenses does not justify the propriety of the stop or arrest.

sufficient to establish probable cause for the arrest of the companion. This is particularly true when as in DiRe, it is very possible for the criminal conduct to be occurring without the knowledge of the companion). (Emphasis Added). The foregoing principles are applicable in this case especially in light of the fact that neither the hotel manager or Armstrong implicate Bethley and Bethley's explanation to the police is not disproven at the time of his arrest. Rather, the police arrest Bethley merely for his association with Amrstrong. Mere association is insufficient not only to convict, but insufficient to base an arrest. As such, the arrest (and search of Bethley's vehicle) was unlawful.

(III)     **THE WEAPON IN THIS CASE WOULD NOT HAVE BEEN INEVITABLY DISCOVERED**

The Government seeks to justify the propriety of the search by concluding that the gun (and other contraband) would have been inevitably discovered. Through an inventory search. (See government's brief at p. 14-15). This claim is without merit. As the Court will recall, the car was in a parking spot when the police encountered Bethley and Armstrong. That being the case, it should not have been impounded and later searched on at the police station.

The police may only may conduct an inventory search of the property to satisfy three purposes: (1) to protect the owner's property; (2) to protect the police against claims of lost or stolen property; and (3) to protect the police from potential danger. See, Colorado v. Bertine, 479 U.S. 367, 372 (1987); Illinois v. Lafayette, 462, U.S. 640, 646 (1983); South Dakota v. Opperman, 428 U.S. 364, 369 (1976); cf. United States v. Baker, 228 F. 3rd 751, 758 (6th Cir. 2000) (inventory search of abandoned car in which loaded gun was visible to protect public, car owner, and police). An inventory search cannot be used as a pretext to find evidence of a crime. Moreover, there was no

reason to impound the car since it was lawfully parked in the lot and did not have to be moved. Mr. Bethley had possession of the keys and could have locked the car and left it there while being taken into police custody. This is especially true as no evidence has been adduced that the hotel or the restaurant had any policy forbidding non patron vehicles to be left in the lot overnight. Had that been the case, the situation might be different and impoundment might be justified. In this case, the gun was eventually found behind the glove compartment, although the ammunition was found elsewhere in the car. An inventory search, even assuming impoundment was permissible, should not have extended all the way into the area behind the glove compartment, no matter what the Delaware State Police policy sets forth as the reasons for inventory searches of impounded cars. Therefore, the search cannot be sustained on the grounds of the inevitable discovery. As such, the government cannot sustain its burden under United States v. Vazquez De-Reyes, 149 F. 3rd 192, 195 (3rd Cir. 1995) of proving that routine police procedures would have inevitably uncovered evidence of the gun

[5]

---

[5] For prophylactic reasons, it is also respectfully submitted that the search of the vehicle was not a valid search incident to arrest or covered within the automobile exception to the warrant requirement. As stated previously, since the arrest was without probable cause and therefore invalid, so was the search and seizure. To be a valid search incident to arrest, the search must be contemporaneous in space (and time). See, e.g. United States v. Johnson, 16 F. 3rd 69 (5th Cir.) clarified on reh'g, 18 F. 3rd 293 (5th Cir. 1994) (warrantless search of briefcase within 6-8 feet of defendant improper as incident to arrest where officer was not concerned with the destruction of evidence or his safety). In this case officer Lewis testified that he was looking for further evidence of the theft such as cell phones, directions to the hotel, money, and the like (p 30-31).. Nor are the requirements of New York v. Belton and its progeny satisfied for the above stated reasons.

**CONCLUSION**

There were insufficient objective facts by which the police could conclude that Bethley and Armstrong had committed or were going to commit a crime. Merely seeing a man standing and ultimately gesturing to the driver of a car at 11:30 p.m. in a hotel parking lot catering to the public and hotel employees is insufficient to allow the police to approach and detain the individuals for questioning. In short, the police had no right to stop these individuals and detain them. Accordingly, the investigative detention was unlawful and any fruits should be suppressed. Moreover, the police lacked probable cause to arrest for theft and related offenses. Finally, the weapons would not have been inevitably discovered, since no evidence has been adduced that the car would have been moved.

For all of the foregoing reasons, it is respectfully requested that the Motion to Suppress Physical Evidence be **GRANTED**.

Respectfully submitted,

*Elliot Cohen*

ELLIOT M. COHEN

## CERTIFICATE OF SERVICE

Elliot M. Cohen, Esquire being duly sworn according to law , deposes and says that on the this 3rd day of March, 2006 A copy, of the within document was served upon the following individuals:

**Honorable Gregory M. Sleet**
U.S. District Judge
U.S. District Court for the
Eastern District of Delaware
844 King Street
Wilmington, DE 19801

**Chris Burke, Esquire (AUSA)**
U. S. Attorney's Office
1007 Orange Street
Wilmington, DE 19801

BY: _/s/ Elliot Cohen_
ELLIOT M. COHEN, ESQ.