IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:05-CR-77 |
| vs. | : | |
| LEONARD DAMONE BETHLEY | : | |

### DEFENDANT LEONARD BETHLEY'S
### PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

*Findings of Fact*

1) Mark Lewis at all times relevant herein has been employed as a Senior Probation Officer of the State of Delaware, and is currently assigned to the Governor's Task Force. (N.T. 11, 12).

2) The purpose of the Governor's Task Force is to investigate Part 1 Crimes such as Drug Dealing, Thefts, Weopens Offenses, as well as to provide enhanced supervision to probationers. (N.T. 12). Mr. Lewis is not a police officer nor is he a member of the ATF. (N.T. 34, 35).

3) Mr. Lewis was a member of the Task Force on May 30, 2005. (N.T. 12)



FILED

APR 2 0 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

4) On May 30, 2005 at approximately 11:30 p.m., Officer Lewis was conducting a stationary surveillance in an unmarked 2002 Ford Taurus in the parking lot of the Holiday Inn located at Rt. 273 and Harmony Road. Officer Lewis was accompanied by Senior Probation Officer James Kelly. (N.T. 12, 15, 35).

5) Government's Exhibit 2 is an aerial photo of the Holiday Inn Complex at Rt. 273 and Harmony Road. (N.T. 13).

6) Mr. Lewis would stay in contact with other member of the Task Force by radio. (N.T. 16).

7) At approximately 11:30 p.m., Mr. Lewis noticed a security guard standing on the northwest side of the restaurant and the guard was dressed in a "security-type uniform". (N.T. 17). Mr. Lewis first notices the guard, identified as Reginald Armstrong, walk out of the hotel entrance and standing there but observed nothing suspicious of Mr. Armstrong at that point. (N.T. 35-36).

8) Mr. Armstrong then goes back into the building and re-emerges. (N.T. 17).

9)   Mr. Lewis then sees Mr. Armstrong standing at the hotel and a vehicle pulls into the parking lot at the Holiday Inn. (N.T. 17). Mr. Armstrong makes a hand gesture towards the vehicle. (N.T. 18). This vehicle is driven by the defendant Leonard Bethley. (N.T. 36). Mr. Bethley was not driving his vehicle in a furtive or evasive manner. (N.T. 36).

10)  The vehicle that Mr. Bethley was driving was either a ... "1994 Oldsmobile or Buick". (N.T. 18).

11)  After Mr. Armstrong made a hand gesture and the vehicle entered into the parking lot, it made a right turn and went to the back of a restaurant at the Hotel Complex. (N.T. 18).

12)  At this point, Mr. Lewis takes his vehicle to the back of the complex. (N.T. 18).

13)  As Mr. Lewis pulls his vehicle to where he observed Mr. Bethley's vehicle, Mr. Lewis saw Mr. Armstrong loading something into the trunk of the vehicle. (N.T. 19).

14) Mr. Lewis does not see Mr. Bethley doing anything suspicious at the point of time where Mr. Armstrong is placing objects into the trunk of Mr. Bethley's car. (N.T. 37).

15) The items that were placed in the car was a quantity of prime rib and six pack of Heineken Beer. (N.T. 37)

16) The area behind the hotel was fairly well lit. (N.T. 21).

17) Upon witnessing the beer and prime rib being loaded into the car, Mr. Lewis summoned for police assistance. (N.T. 22).

18) Once the police and Mr. Lewis had arrived, Lewis heard Bethley say he was there to buy meat as he knew a cook at the restaurant and that the restaurant had a party earlier in the evening in which too much meat was purchased. (N.T. 25). Mr. Bethley did not know the items were stolen. (N.T. 97).

19) When the police vehicles initially converged, Mr. Bethley was standing there and being cooperative and made no attempt to run. (N.T. 38).

20) Both Mr. Bethley and Mr. Armstrong were placed in handcuffs and the vehicle was searched. (N.T. 26).

21) A search of the glove box showed it opened farther than it should have and Mr. Lewis reached his hand behind the glove box. (N.T. 26-27). The opening was 1-2 inches (N.T. 27) and Lewis felt a latex glove.

22) The glove contained 16 rounds of nine millimeter ammunition. (N.T. 27).

23) Mr. Lewis then pushed down on the frame of the glove box and located a Smith and Wesson .38 Caliber Gun. (N.T. 27). (See G3 and G3A). (See also G1 and G1a). The gun contained four live rounds of ammunition and one spent round. (N.T. 31).

24) According to Mr. Lewis, ... "[p]ossibly 18 inches to two feet would have separated the handgun that was found on the frame of the dashboard to where the bullets were located. (N.T. 30).

25) The gun was found two feet away from the driver and by Lewis' own estimation it would be difficult for someone sitting in the driver seat to gain immediate access to the gun". (N.T. 32, 41).

26) This Court finds that Mr. Bethley was asked for consent to search and that Mr. Bethley agreed to a search of the vehicle.

27) Mr. Lewis does not know how long the gun was in the vehicle or who actually owns the gun. (N.T. 41-42).

28) Nor does Mr. Lewis have any knowledge about other people who may have had access to the car prior to the date of the arrest. (N.T. 42).

29) Corporal Stout also testified for the government.

30) Upon arriving at the scene Stout talked to Bethley and Armstrong and asked each of them for identification. (N.T. 53).

31) Armstrong had no identification. (N.T. 54).

32) Bethley provided a Delaware Driver's License in the name of Keenan Bethley. (N.T. 54). (See G5).

33) Keenan Bethley is Leonard Bethley's brother. (N.T. 79).

34) Leonard Bethley assumed his brother's identity when he moved back from Delaware as he was an escapee from a 20 year prison sentence in Wisconsin. (N.T. 79-80).

35) Mr. Bethley was also arrested with other documentation in the name of his brother. He was arrested with an employment card having worked at Pepper Hamilton doing maintenance in Philadelphia, Pennsylvania, as well as a driver's license under Keenan Bethley's name. These were not forged documents. (N.T. 67, 86).

36) Mr. Bethley was in possession of these documents so as to assume a different identity given his prison escape status.

37) After the bullets and gun were found, Bethley, who was standing in front of the Officers who were bent down on either side of the car, began to run. (N.T. 73).

38) When asked why he ran, Bethley said that he didn't want to go back to Wisconsin. (N.T. 72-73). Additionally, he did not want to go back to a maximum security prison. (N.T. 106).

39) Mr. Bethley had served ten years and three or four months on the twenty year Wisconsin prison sentence before he escaped. (N.T. 78). He was on prison work release at the time. (N.T. 78-79).

40) Bethley escaped on October 17, 2002. (N.T. 79).

41) Bethley's brother purchased a 1994 Buick in Milwaukee, Wisconsin. (N.T. 80). (G7). The vehicle was titled to his brother. (N.T. 81).

42) Bethley took the vehicle to Delaware. (N.T. 82).

43) Mr. Bethley owned an auto repair shop with three other individuals. This business also bought and sold cars. (N.T. 87, 88). The people were Mark Herron, Damon Mills, and an older guy named Rocco. (N.T. 90).

44) The 1994 Buick that was purchased in Milwaukee was used for errands by the business. (N.T. 88).

45) Everyone associated with the business had access to the keys to the car and thus had access to the car itself. (N.T. 89).

46)  Mr. Bethley had never seen the gun prior to his arrest of May 30, 2005. (N.T. 90).

47)  Mr. Bethley denied that the gun belonged to him. (N.T. 108). He also denied ownership of the bullets. (N.T. 108).

## Conclusions of Law

### Knowledge

The government must prove "knowing possession" if the charge is possession of a firearm by a prohibited person. This has been interpreted to mean that the defendant must "know" that he possesses a gun, not that he must know either that he is convicted felon or otherwise a prohibited person, U.S. v Langley, 62 F. 3d 602,604 (4th Cir.1995) (proof that defendant knew he was felon not required), or that his status precludes his possession of a firearm U.S. v. Kafka, 222 F. 3d 1129 (9th Cir. 2000)(government not required to prove knowledge that possession of firearm violates domestic violence restraining order); U.S. v. Sherbondy, 865 F. 2d 996, 1002 (9th Cir. 1988)(government not required to prove knowledge of illegality of possession). "Knowing possession," as expected, can be proven by both direct and circumstantial evidence. See U.S. vs. Hernandez, 972 F. 2d 885 (8th Cir 1992)(finding that defendant knowingly possessed gun was supported by evidence that pawn ticket found in apartment in which defendant was staying was receipt for pawn of gun); U.S. v. Winchester, 916 F. 2d 601(11th Cir 1990)(evidence of travel bag which contained firearms and papers and photographs identifying it as belonging to defendant was sufficient to show knowledge).

*Possession*

The defendant can have either actual, constructive joint or sole possession. See, e.g., U.S. v Staula, 80 F. 3rd 596, 605(1st Cir. 1996); U.S. v. Wright, 968 F.2d 1393 (1st Cir. 1992); U.S. v. Richards, 967 F. 2d 1189(8th Cir 1992). A person has possession of something" if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it. U.S. v. Perez, 67 F. 3d 1371, 1380 n. 8 (9th Cir. 1995), withdrawn in part on reh'g by 116 F. 3d 840 (9th Cir 1997); Ninth Circuit Model Criminal Jury Instruction, §3.18 (2000ed). A person "in constructive possession of an item knowingly holds the power and ability to exercise dominion and control over it "U.S. v Massey, 687 F. 2d 1348, 1354 (10th Cir. 1982). However," {m}ere presence on the scene plus association with illegal possessors is not enough " to establish constructive possession. U.S. v. Birmley, 529 F. 2d 103,107(6th Cir. 1976). Convictions have been reversed based on the government's failure to sufficiently connect the defendant to the weapon allegedly possessed. See e.g. U.S. v Casterline, 103 F.3rd 76, 78-79(9th Cir. 1996)(while ownership may be circumstantial evidence, it cannot substitute for actual or constructive possession requirement); U.S. v. Blue, 957 F.2d 106(4th Cir. 1992) (conviction reversed where evidence showed only that gun found in car under defendant's seat and no other evidence linked gun to defendant other than police officer's testimony that he saw the defendant's shoulder dip down after stopping car); U.S. v. Evans, 950 F. 2d 187,192 (5th Cir. 1991)(evidence of knowledge insufficient where defendant drove car that had been driven immediately before by other drug dealers, gun found on rear floorboard and officer observed him lean onto the floorboard); U.S. v. Beverly, 750 F. 2d 34 (6th Cir1984) (conviction reversed due to insufficient evidence of possession despite fact gun with defendant's fingerprint found in wastebasket located near defendant); U.S. v Flenoid, 718 F. 2d 867, 868 (8th Cir. 1983)(mere presence as

passenger does not establish possession, but testimony that defendant placed something in spot where weapon was later found can support such a finding.

Additionally, Dominion and control are not established by "mere proximity" to the contraband or mere presence on the property where it is located or mere association with the person who controls the contraband or the property. See, United States vs. Jenkins, 90 F.3rd 814 (3rd Cir. 1996); United States vs. Brown, 3 F.3rd 673, 680 (3rd Cir. 1993), cert. denied, 510 U.S. 1017 (1993); United States vs. Dunlap, 28 F.3rd 823, 826 (8th Cir. 1994); United States vs. Ziegler, 994 F.2d 845, 848 (D.C. Cir. 1993); United States vs. Vasquez-Chan, 978 F.2d 546, 550 (9th Cir. 1992).

LOUIS T. SAVINO & ASSOCIATES

By: _____
ELLIOT M. COHEN, ESQUIRE
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

Elliot M. Cohen, Esquire being duly sworn according to law, deposes and says that on the 18th day of April, 2007 a copy of the within document was served upon the following individuals:

Honorable Gregory Sleet
U.S. District Judge
U.S. District Court for the
District of Delaware
844 King Street
Wilmington, Del 19801

Sophie Bryan, Esquire
U.S. Attorney's Office
1007 Orange Street
Suite 700
P.O. Box 2046
Wilmington, Del 19899

Mr. Leonard Bethley
Salem County Correctional Facility
125 Cemetery Road
Woodstown, NJ 08098

LOUIS T. SAVINO & ASSOCIATES

By: _____
ELLIOT M. COHEN, ESQUIRE
*Attorney for Defendant*